**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL CASE NO: 5:26-CR-00061-CHB-MAS** ***ELECTRONICALLY FILED***

**UNITED STATES OF AMERICA** **PLAINTIFF**

**VS.** **MOTION FOR ORDER PROHIBITING DEFENDANT'S APPEARANCE IN STATE COURT PROCEEDINGS**

**BRAILEN LEE WEAVER** **DEFENDANT**

** ** ** ** ** ** ** ** **

The Defendant, Brailen Weaver, by counsel, respectfully requests a Court Order preventing the United States Marshals Service and the Woodford County Detention Center from transporting him to, or presenting him on Zoom for, state court proceedings in Madison Circuit Court.

## I. BACKGROUND

On May 1, 2026, the United States filed a criminal complaint and affidavit alleging that on April 30, 2026, Brailen Weaver ("Weaver") committed armed bank robbery in violation of 18 U.S.C. § 2113(a), use of a Firearm in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A) and Causing Death with a Firearm in violation of 18 U.S.C. §924(j). (Complaint, DE 1). He was arrested and taken into federal custody on the same day. At his initial appearance on May 4, 2026, the government moved for pretrial detention and Weaver waived his right to a detention hearing. (Initial Appearance, DE 4). The court issued a Detention Order on May 6, 2026, directing that Weaver be remanded to the custody of the Attorney General and that "On order of the court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of

an appearance in connection with a court proceeding." (Detention Order, DE 7, Page ID #19). On May 21, 2026, Weaver was indicted in the United States District Court for the Eastern District of Kentucky on the three charges listed in the Complaint. (Indictment, DE 10, Page ID #22-28). Since that day, Weaver has remained in federal custody, housed at the Woodford County Detention Center in Versailles, Kentucky. On June 17, 2026, the trial in this case was continued generally at the request of the parties and, as of this writing, has not been rescheduled. (Order, DE 27). Weaver is due to appear before this court on November 4, 2026, at 11:00 a.m. for a status conference. (Order, DE 31).

On July 15, 2026, six weeks *after* the federal indictment, a Madison County grand jury indicted Weaver on two counts of Murder in violation of KRS 507.020 and one count of Fleeing or Evading in violation of KRS 520.095, all stemming from the same April 30, 2026, incident. Arraignment was originally scheduled for October 8, 2026, but was rescheduled by agreed order for November 12, 2026. Counsel for the United States has recently informed the undersigned attorneys that they do not disapprove of Weaver's presence via video teleconference at that November 12 arraignment in Madison County. (A copy of the letter from the USAO, setting forth its position, is attached hereto as Exhibit 1). Weaver opposes such an appearance, whether by video or in-person and, for the following reasons, requests an order prohibiting any appearances in state court.

## II. ARGUMENT

### A. <u>The Court Should Prevent Parallel Proceedings Arising from the Same Conduct</u>

The Supreme Court, the Sixth Circuit, and the Department of Justice have historically disfavored simultaneous state and federal prosecutions, especially when those prosecutions arise out of a single course of conduct. The United States Marshals Service's policy confirms that a

state's request for a federal prisoner's presence at a state court proceeding does not automatically require compliance. Under Policy Directive 9.13, the Marshals Service is not required to honor a state or local writ seeking a federal prisoner in its custody and "generally, the writ is not honored until the completing of the prisoner's sentencing." U.S. Marshals Serv., Policy Directive 9.13; *Writs of Habeas Corpus and Special Production*. The policy also requires consultation with the United States Attorney's Office concerning potential reasons not to honor a writ and, in specified circumstances involving an unsentenced prisoner, written concurrence from the federal trial judge before the writ is honored. *Id.* § C.6–7.

District Courts recognize and endorse this policy. For instance, in *United States v. Simmons,* No. 4:23-CR0002-6-RGJ, 2026 WL 323129, at *4 (W.D. Ky. Feb. 6, 2026), defendant Simmons was taken to a state court proceeding while in federal custody at the Daviess County Detention Center. This was done without a writ and without the permission of the U.S. Marshal. The court acknowledged that this was a mistake. "… because he was in federal custody, the state parole warrant should never have been served on him without permission of the USMS. … This was done without the permission of the USMS and, given that he was in federal custody on a federal warrant, Simmons never should have been transported in state custody." *Id.*

Similarly, in *Special Prosecutor of State of N. Y. v. U.S. Att'y for S. Dist. of New York*, 375 F. Supp. 797, 804 (S.D.N.Y. 1974), a state prosecutor sought an order to compel the U.S. Marshal to comply with a state court writ. In denying the motion, the court ruled that the federal government had primary jurisdiction over the individual and was under no obligation to comply with the writ. "[S]tate courts possess no power to remove a person from the jurisdiction of federal courts or agencies by writ of habeas corpus. … [That principle] is, in fact, simply a variant of the well-established doctrine that the court which first assumes control over the subject matter of litigation-

be it persons or property – shall retain exclusive jurisdiction over it until it has exhausted its remedies." *Id.*

This policy aligns with the Supreme Court's directive that simultaneous prosecutions should be avoided. In *Petite v. United States*, 361 U.S. 529, 530–31 (1960), a case involving successive federal prosecutions, the Supreme Court remanded the case with directions to dismiss the indictment on the grounds the defendant had been subject to multiple federal prosecutions stemming from the same conduct. It recognized the federal government's policy that offenses arising from a single transaction ordinarily should be alleged and tried together rather than made the basis of multiple prosecutions. That reasoning does not only apply to simultaneous federal prosecutions: "The Solicitor General on behalf of the Government represents this policy as closely related to that against duplicating federal-state prosecutions, which was formally defined by the Attorney General of the United States in a memorandum to the United States Attorneys. (Department of Justice Press Release, Apr. 6, 1959.)" *Id.* at 531.

The Supreme Court applied the *Petite* policy to federal-state simultaneous prosecutions in *Rinaldi v. United States*, 434 U.S. 22, 27 (1977), where it held that a federal indictment should have been dismissed because the defendant had already been tried and convicted in a Florida court for the same offenses. The Court explained that the Department of Justice's *Petite* policy serves both to promote the efficient management of limited prosecutorial resources and to protect defendants from the unfairness associated with successive prosecutions based on the same conduct. *Id.* at 31. The Department's current policy likewise directs federal prosecutors, when federal and state jurisdiction overlap, to consult their state counterparts to determine the most *appropriate single forum* in which to proceed and, if possible, resolve all criminal liability arising from the conduct. U.S. Dep't of Justice, Justice Manual § 9-2.031 (emphasis supplied).

District Courts and the Marshals Service have a longstanding policy against allowing simultaneous prosecutions for a defendant in federal custody to protect against unnecessary burdens and potential logistical and safety concerns. Where the State has identified no compelling need for an immediate arraignment, the *Petite* policy and US Marshals policy should be adhered to.

**B. <u>There is no Sufficient Justification for Simultaneous Proceedings</u>**

Longstanding Supreme Court precedent holds that the court with primary jurisdiction (the sovereign that took custody of the defendant first) must be allowed to fully prosecute its case before another Court can take jurisdiction. This general rule has many justifications, including avoiding interference with the judicial process, logistical complications, and unnecessary expense. In describing the rule, the Supreme Court stated, "The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." *Ponzi v. Fessenden*, 258 U.S. 254, 259–60 (1922).

Although *Ponzi* recognizes that a sovereign may consent to another sovereign's use of a defendant in its custody, the court also sought to preserve the first sovereign's ability to control the defendant. *Id.* at 260–62. If there is no legitimate need for an immediate state court appearance, comity and judicial efficiency favor allowing the federal case to be *fully prosecuted* before Weaver appears in state court. In *Ponzi,* the Supreme Court permitted the production of a federal prisoner in state court, but only because a writ had been filed, the United States had consented to the arrangement, and the defendant had already been sentenced in federal court. There was, therefore, relatively little risk of interference with the federal court litigation, and the transfer could be made

without prejudicing the defendant's rights or the United State's interests. Here, such a transfer would prejudice the Defendant as discussed below.

Additionally, allowing a defendant in federal custody to make state court appearances without a valid writ, and written concurrence from the federal trial judge, would be in contravention of the U.S. Marshals Policy. Policy Directive 9.13 indicates that the Marshals have additional safeguards for a federal defendant who has not yet been sentenced. Ordinarily, such a defendant's production in state court would be accomplished by a writ of *habeas corpus*, "supported in writing by the United States Attorney," and that "the USM or his or her designee will seek written concurrence from the federal trial judge before honoring the writ. U.S. Marshals Serv., Policy Directive 9.13, § C.7, *Writs of Habeas Corpus and Special Production.* Producing Weaver in Madison Circuit Court without a writ, written approval of the U.S. Attorney's Office, and/or the concurrence of this court circumvents U.S. Marshals Policy, and longstanding comity principles. To date, to counsel's knowledge, no valid state court writ has been served upon the U.S. Marshal's Office concerning Weaver. Nor has the U.S. Attorney's Office offered any justification (or reasoning) for permitting such an appearance. [See Exhibit 1].

These policies and principles exist to facilitate coordination between state and federal proceedings, preserve the federal court's control over a defendant for whom it has primary jurisdiction, and prevent opposing writs, increased transportation costs, additional safety risks, and confusion. Allowing the state proceeding to move forward without those safeguards risks undermining the federal court's authority over the pending prosecution and creates an unnecessary conflict between these two courts. If the state cannot articulate a compelling need for Weaver's immediate appearance, it should be required to wait its turn. As recognized by the Fourth Circuit in *United States v. Grimmond,* 137 F.3d 823 (4th Cir. 1998), "When a defendant violates the laws

of several different sovereigns … at least one sovereign, and perhaps more, will have to wait its turn at the prosecutorial turnstile. Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay." Therefore, the State's desire to prosecute its case sooner rather than later does not, by itself, justify disrupting the pending federal prosecution and risking the procedural and logistical complications that could occur. Absent another compelling reason for Weaver's immediate state court appearance, simultaneous prosecutions should not be permitted.

To be clear, the Order sought by the Defendant is not directed at the state itself, but only the United States Marshal's Service – directing that they not permit the Defendant to appear for state court proceedings.[1]

**C. <u>Weaver Would be Prejudiced by Simultaneous Prosecutions</u>**

In addition to the logistical problems of simultaneous prosecutions – transport, security, confusion – there is a concrete risk of prejudice to the Defendant from permitting his appearance in state court. First, once an arraignment occurs, there will be no mechanism for staying those proceedings. This places the Defendant in the position of having to defend two death-eligible prosecutions simultaneously with all the attendant confusion and potential conflicts.

Second, is the likelihood of prejudicial pretrial publicity that would compromise the Defendant's right to a fair and impartial jury in the federal prosecution guaranteed by the Sixth Amendment. The parties to the federal prosecution have entered into an Agreed Order protecting the disclosure of the bulk of discovery materials from disclosure and dissemination. [Agreed Protective Order, DE 25]. That Order serves both the government's interest in witness protection

---

[1] Once the state court proceedings commence, the court may not have the authority to stay those proceedings thereafter. See, Anti-Injunction Act, 28 U.S.C. § 2283; *Younger v. Harris*, 401 U.S. 37 (1971).

and the joint interest in preventing prejudicial pretrial publicity. However, if the state prosecution proceeds simultaneously, there is no guarantee that evidence would not be disclosed to the public (and media), thereby prejudicing Defendant's right to a fair trial in federal court.

Third, the federal prosecution involves death-eligible offenses. This triggers obligations for defense counsel to conduct an exhaustive mitigation investigation by appropriate specialists. That process has been underway for months. If the state prosecution is permitted to go forward, state defense counsel will be equally obligated to conduct a mitigation investigation that might conflict with the federal counterparts. Witnesses, family members, and collateral sources will be subject to multiple interviews by different specialists who may, or may not, have similar defense strategies. This would impair Weaver's right to effective representation in the federal case. Accordingly, the practical problems of allowing simultaneous federal-state prosecutions in this matter highlight the exact concerns which led to the principles enunciated in *Petite v. United States*, 361 U.S. 529 (1960).

Wherefore, the Defendant requests an appropriate Order of the court.

Respectfully submitted,

/s/ PATRICK F. NASH
NASH · MARSHALL, PLLC
129 West Short Street
Lexington, Kentucky 40507
Telephone: (859) 254-3232
Fax: (859) 225-4746
E-mail: pfnash@nashmarshall.com

AND

/s/ THOMAS LYONS
Thomas L. Lyons Law Office
201 W. Short St., Suite 820
Lexington, Kentucky 40507
Telephone: 859-231-0055
Email: thomaslyons@hotmail.com
*Attorneys for Brailen Weaver*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2026, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this matter or service was completed by first class mail to any non-CM/ECF participants.

/s/ THOMAS LYONS